UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMERICAN PSYCHIATRIC ASSOC., *et al.*, <br> *Plaintiffs*, <br> *v.* <br> ANTHEM HEALTH PLANS, *et al.*, <br> *Defendants.* | Civil No. 3:13cv494 (JBA) <br><br> September 25, 2014 |

## RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiffs, a collection of individuals, doctors, and professional associations, allege in their Second Amended Complaint [Doc. # 32] that Defendants Anthem Health Plans, Inc. ("Anthem") and WellPoint, Inc. ("WellPoint") utilize methodologies to determine insurance reimbursement rates for mental health services that are not comparable to those Defendants utilize in determining reimbursement rates for medical and surgical services in breach of their fiduciary obligations to their plan holders under the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA" or the "Parity Act"), Pub. L. No. 110–343, Div. C §§ 511–12, 122 Stat. 3861, 3881 (Oct. 3, 2008) and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*  Plaintiffs also allege that, in doing so, Defendants have breached contracts between Anthem and the doctors, which prohibit Anthem from discriminating against patients on the basis of their health status, and that Anthem has tortiously interfered with the business relationships between these doctors and their patients.  Defendants move [Doc. # 37] move to dismiss the Second Amended Complaint, contending (1) that the doctors and professional organizations lack third-party and associational standing to assert these claims and (2) that Plaintiffs have failed to state a claim for breach of fiduciary duty under ERISA.

For the reasons that follow, Defendants' Motion to Dismiss is granted as to Counts One through Three on the basis that Plaintiffs lack standing and have failed to state a claim and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

I.    **Facts**

The Parity Act was "designed to end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-sponsored group health plans and health insurance coverage offered in connection with group health plans." *Coal. for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010). It "requires parity in aggregate lifetime and annual dollar limits for mental health benefits and medical and surgical benefits" and "requires employer-sponsored group health plans to cover mental illness and substance abuse on the same basis as physical conditions." *Id.* Specifically, the MHPAEA requires group health plans (or insurers) to ensure that the "financial requirements" and "treatment limitations" that are applicable to mental health or substance use disorder benefits are "no more restrictive" than the predominant financial requirements or treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage). *See* 29 U.S.C. § 1185a(a)(3); 42 U.S.C. § 300gg–5(a)(3); 26 U.S.C. § 9812(a)(3). The MHPAEA defines "financial requirements" as including "deductibles, copayments, coinsurance, and out-of-pocket expenses" and defines "treatment limitations" as including "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." *Id.*

Plaintiffs allege that Defendants have violated this law, because they "generally reimburse psychiatrists less than they reimburse non-psychiatric physicians who provide comparable medical services" and "impose onerous administrative requirements on psychiatrists which can interfere with the doctor's ability to provide quality care." (2d Am. Compl. ¶ 36.)   For example, Defendants do not allow psychiatrists to bill for psychotherapy on the same day in which they provided medical services, which "required doctors to either provide a time consuming service, such as psychotherapy, without charge or code, or to ask the patient to come back for psychotherapy on another day thereby making access to needed psychiatric services more restrictive than allowable by law because patients would be required to visit twice for a service that should be provided in one visit and incur more costs associated with another visit." (*Id.* ¶ 44.)

Defendants' unlawful conduct "prevent[s] participants and beneficiaries like B.G. and S.M. from receiving the mental health services they need, limits their access to in network providers and treatment, and often times forces them to change mental health providers." (*Id.* ¶ 85.)

### 1.   The Parties

Anthem is a Connecticut insurance company that does business as Anthem Blue Cross and Blue Shield and issues and administers insurance policies. (*Id.* ¶ 8.)  WellPoint, directly or indirectly owns 100% of the stock of Anthem.  (*Id.* ¶ 9.)

The American Psychiatric Association, the Connecticut Psychiatric Association, the Connecticut Council of Child and Adolescent Psychiatry (the "Associations" or the "Association Plaintiffs") are national and local membership organizations of psychiatrists. They do not bring any claims on their own behalf, but instead bring claims on behalf of

member psychiatrists who interact with Defendants on an in-network or out-of-network basis and members' patients who are covered by Defendants' health plans.  (*Id.* ¶¶ 1–3.)

Dr. Susan Savulak is a psychiatrist and a "participating" or "in-network" provider pursuant to a contract with Defendant Anthem.  (*Id.* ¶ 4; *see also* Dr. Savulak's Provider Agreement, Ex. 2 to Izzo Decl. [Doc. # 38].)  Two of Dr. Savulak's patients, B.G. and S.M., have purported to assign claims to Dr. Savulak but are not themselves parties to this suit. B.G. is "a participant of a self-insured health plan, Lumenos Health Savings Account ("LHSA") provided by her employer."  (*Id.* ¶ 18.)  S.M. is "a beneficiary under an Anthem insured Lumenos Health Savings Plan provided by SM's spouse's employer."  (*Id.* ¶ 19.) Dr. Theodore Zanker is a psychiatrist, who used to be an in-network provider with

Anthem, but no longer participates in Anthem's networks, and brings this lawsuit as a "non-participating" or "out-of-network" provider.[1] (*Id.* ¶ 7.)

## II.   Discussion

Although there is no private right of action under the Parity Act, portions of the law are incorporated into ERISA and may be enforced using the civil enforcement provisions in ERISA § 502, to the extent they apply. *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 980 F. Supp. 2d 527, 544 (S.D.N.Y. 2013). Defendants contend that Plaintiffs' claims fail because they lack standing under both ERISA and the Constitution and they fail to state a claim under ERISA.

---

[1] The Second Amended Complaint includes claims by (1) by the Association Plaintiffs under ERISA § 502(a)(3) alleging that Defendants' conduct violates MHPAEA, seeking declaratory and injunctive relief (Count One); (2) by Dr. Savulak on behalf of her assignors B.G. and S.M. under ERISA § 502(a)(3) alleging that Defendants' conduct breached their fiduciary duties, seeking declaratory and injunctive relief (Count Two); (3) by Dr. Zanker under ERISA § 502(a)(3) alleging that Anthem's practices with respect to out-of-network psychiatrists violate MHPAEA, seeking declaratory and injunctive relief (Count Three); (4) by Dr. Zanker against Defendants alleging that their conduct tortiously interferes with his ongoing business relationships with his patients, seeking damages (Count Four); (5) by Dr. Savulak alleging Anthem has breached its provider contract with her, seeking damages (Count Five); (6) by the Association Plaintiffs alleging that Anthem has breached its standard-form provider contract with their members, seeking declaratory relief (Count Six); (7) by W.W. against Anthem alleging that Anthem tortiously interfered with her contract with her employer, the State of Connecticut (Count Seven); and (8) by Dr. Savulak and the Association Plaintiffs alleging that WellPoint tortiously interfered with the provider contract between Dr. Savulak and her colleague psychiatrists and Anthem (Count Eight). Because W.W.'s healthcare plan is self-insured and not subject to ERISA or the Parity Act (Defs.' Mem. Supp. at 32), Plaintiffs have withdrawn Count Seven. (Pls.' Opp'n at 27 n.11).

A.      Standing[2]

Defendants contend that Plaintiffs lack standing to assert claims under ERISA § 502(a)(3) and that the Association Plaintiffs also lack Article III standing. "A plan participant suing under ERISA must establish both statutory standing and constitutional standing, meaning the plan participant must identify a statutory endorsement of the action and assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty." *Kendall v. Employees Ret. Plan of Avon Products*, 561 F.3d 112, 118 (2d Cir. 2009).

"The prudential limitations on jurisdiction require that a plaintiff establish that he or she is the proper proponent of the rights asserted; a litigant may not raise the rights of a third-party, or assert speculative, conjectural or generalized grievances more appropriately resolved by a governmental body, other than the courts." *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1346–47 (2d Cir. 1989) (internal citations omitted).

As discussed below, the Court concludes that (1) even if the relevant insurance plans did not preclude the assignment of ERISA claims to Dr. Savulak, she lacks statutory standing under ERISA to pursue such claims on behalf of her patients; (2) Dr. Zanker and

_____

[2] Challenges to a plaintiff's standing to bring a claim are properly addressed under Rule 12(b)(1). *Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006). A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *Id.*

Dr. Savulak lack third party statutory standing under ERISA to pursue claims on behalf of their patients; and (3) the Association Plaintiffs lack associational standing under Article III to pursue claims on behalf of their members' patients.

    *1.     Statutory Standing for Dr. Savulak Based on B.S. and S.M.'s Assignment of Claims (Count Two)*

        *a)     Contractual Assignability*

Only "a participant, beneficiary, or fiduciary" of an ERISA plan can bring a claim under § 502(a)(3).  29 U.S.C. § 1132(a)(3).  However, the Second Circuit has "carv[ed] out a narrow exception to the ERISA standing requirements," granting "standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care."  *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001).  Dr. Savulak brings her claims based on an assignment from her patients, B.G. and S.M.[3]

Although Defendants do not dispute that "the assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA," *I.V. Servs. of Am., Inc. v. Trustees of Am. Consulting Engineers Council Ins. Trust Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998), they contend that the purported assignment of claims from B.G. and S.M. to Dr. Savulak is invalid, because both of their plans contain anti-assignment provisions that prohibit assignment; as to B.G. of the right "to receive benefits under the Benefit

_____

[3] The assignment provides her with "all right title and interest in and to any claim or cause of action in law or in equity, including but not limited to claims for breach of fiduciary duty, injunctive and declaratory relief, arising out of or relating to any alleged violation of the Mental Health Parity and Addiction Equity Act, the Employee Retirement Income Security Act, or any provision of state law that relates to those claims against [their] plan."  (2d Am. Compl. ¶ 4.)

Program" (B.G. Plan, Ex. 3 to Defs.' Mem. Supp. [Doc. # 39] at 72), and as to S.M. of "rights, benefits or obligations" (S.M. Plan, Ex. 4 to Defs.' Mem. Supp. at 94).

Courts apply traditional principles of contract interpretation to anti-assignment provisions, *Neuroaxis Neurosurgical Associates, PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 352 (S.D.N.Y. 2013), although "[i]f there are ambiguities in the language of an insurance policy that is part of an ERISA plan, they are to be construed against the insurer," *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004).

Plaintiffs maintain that the anti-assignment provisions are inapplicable because they refer only to "benefits," and B.G. and S.M. have instead assigned legal claims for breach of fiduciary duty.  (Pls.' Opp'n [Doc. # 42] at 15–16.)  Courts have differed as to whether the distinction suggested by Plaintiffs is one recognized under ERISA.  *Compare Texas Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 215 (5th Cir. 1997) ("The right to sue a plan administrator for breach of fiduciary duty is not a right to receive payments," and thus not a "benefit" or provided under a plan, but rather a "right . . . provided by ERISA itself" under 29 U.S.C. §§ 1109, 1132(a)(2)."), *and Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994), *with Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 615 (7th Cir. 2002) ("[T]he ground of the decision . . . [in] *Texas Life* . . . is one we have difficulty understanding.  It is that benefits, and a claim that benefits were withheld in breach of the plan administrator's fiduciary obligations, are different animals, so that the statutory anti-assignment provision is interpretable as forbidding assignment of benefits but not of benefit claims that have matured into causes

of action."), *and APCO Willamette Corp. v. P.I.T.W.U. Health & Welfare Fund*, 390 F. Supp. 2d 696, 699 (N.D. Ill. 2005).

Notwithstanding this division of authority, for the purposes of this motion, the Court will assume that there is a cognizable distinction between rights to receive benefits and legal claims for breach of ERISA fiduciary duty and that the anti-assignment policy provisions do not preclude assignment of B.G.'s and S.M.'s ERISA claims.

b)      *Statutory Assignability Under ERISA*

This does not end the matter, however, and the distinction between the assignment of the right to receive benefits and legal causes of actions for breach of ERISA fiduciary duty begs the question whether patients can even assign claims for breach of fiduciary duty under ERISA § 502(a)(3)—as opposed to assigning claims for payment for health care services rendered under ERISA § 502(a)(1)(B), an issue not addressed by the parties.  Even if as a matter of contractual interpretation, Plaintiffs can assign their claims for breach of fiduciary duty, the next question is whether such an assignment would confer standing under ERISA § 502(a)(3), which allows suits to be brought only by "a participant, beneficiary, or fiduciary" of an ERISA-regulated plan, and which "[c]ourts have consistently read . . . as strictly limiting 'the universe of plaintiffs who may bring certain civil actions.'"  *Connecticut v. Physicians Health Servs. of Connecticut, Inc.*, 287 F.3d 110, 120 (2d Cir. 2002) (quoting *Harris Trust and Savs. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 247 (2000)).  The "narrow exception to the ERISA standing requirements" that allows patients to assign claims for the payment of healthcare services

provides "standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care."[4]  *Simon*, 263 F.3d at 178.

The justification for this exception is that "[m]any providers seek assignments of benefits to avoid billing the beneficiary directly and upsetting his finances and to reduce the risk of non-payment.  If their status as assignees does not entitle them to federal standing against the plan, providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary."  *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290 n.6 (5th Cir. 1988), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012).  By contrast, the patients here purport to assign to their doctors only their "right[,] title[,] and interest in . . . any claim or cause of action in law or in equity," i.e., the right to bring this lawsuit challenging financial and treatment limitations that impact patient access to mental health services, and there are no facts pled to suggest that this assignment was in consideration for medical treatment.  (2d Am. Compl. ¶ 4.)

The Second Circuit has declined to expand the medical-care–provider exception beyond this narrow context.  In *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 179 (2d Cir. 2001), it held that the plaintiff creditor, who had been assigned health care providers' claims for their patients' benefits, did not have standing under ERISA to seek collection from the patients' insurance companies, because "granting plaintiff standing 'would be tantamount

---

[4] It appears that that anti-assignment provisions in the B.G.'s and S.M.'s healthcare plans may preclude this type of assignment, because "ERISA instructs courts to enforce strictly the terms of plans" and "an assignee cannot *collect* unless he establishes that the assignment comports with the plan."  *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991).

to transforming health benefit claims into a freely tradable commodity.'"  *Id.* (quoting *Simon v. Value Behavioral Health, Inc.,* 208 F.3d 1073, 1081 (9th Cir. 2000)).  In *Value Behavioral Health*, whose reasoning the Second Circuit expressly adopted in *Simon*, the Ninth Circuit explained that the "judicial exception to the rule that only enumerated parties may sue for benefits under Section 502(a)(1)(B)" was justified because "[g]ranting derivative standing to health care providers simplified the billing structure among the patient, his care provider, and his benefit plan in a way that enhanced employee health benefit coverage" whereas "endless reassignment of claims . . . would allow third parties with no relationship to the beneficiary to acquire claims solely for the purpose of litigating them."[5]  *Value Behavioral Health, Inc.*, 208 F.3d at 1081, *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007).

From the foregoing the Court concludes that the medical-care–provider exception does not apply in the context of this case and there is no other basis for standing under ERISA.  *See Ne. Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 154 n.6 (3d Cir. 1985) (expressing "serious doubts" about whether an ERISA plan beneficiary "could assign along with her substantive rights her

---

[5] In *Physicians Health Servs. of Connecticut, Inc.*, the Second Circuit declined to address "whether different rules of standing apply under [ERISA § 502(a)(3)] than under [ERISA § 502(a)(1)(B)]."  287 F.3d at 115 n.4.

right to sue in federal court" under ERISA § 502(a)(1)(b)).   Accordingly, Dr. Savulak

lacks standing for Count Two based on the assignment from B.G. and S.M.[6]

>    2.    *Third Party Statutory Standing for Dr. Zanker and Dr. Savulak*
>          *(Counts Two and Three)*

Plaintiffs offer a distinct theory of standing for Dr. Zanker in Count Three, which

also provides an alternative basis (apart from assignment) for the standing of Dr. Savulak

in Count Two (*see* Pls.' Opp'n at 14): that they have statutory standing to assert ERISA

claims on behalf of their patients by virtue of the doctor-patient relationship independent

of any assignments (*id.* at 9).   Defendants contend that there can be no standing to bring

an ERISA claim absent a valid assignment.   (Reply [Doc. # 43] at 2.)

"In the ordinary course, a litigant must assert his or her own legal rights and

interests, and cannot rest a claim to relief on the legal rights or interests of third parties."

*Powers v. Ohio*, 499 U.S. 400, 410 (1991).   Despite the "general reluctance to permit a

litigant to assert the rights of a third party," however, a litigant may assert the rights of a

third party when the litigant (1) has suffered "injury in fact" (2) has a  "close relationship"

---

[6] Defendants do not challenge Dr. Savulak's and Dr. Zanker's Article III standing. The Article III "injury" that provides health care providers with standing in ERISA cases under the medical-care–provider exception is the cost of the services provided for which the provider seeks reimbursement.   The Doctor Plaintiffs' personal financial stake in this suit is sufficient to confer Article III standing, because the Complaint alleges that Defendants' policies have "dramatically reduced" the payments that they receive for providing treatment.   (2d Am. Compl. ¶ 49.)   Notably, *Singleton v. Wulff,* 428 U.S. 106, 108–09 (1976), found Article III standing for doctors to assert the claims of their patients on the basis that they alleged "that they have performed and will continue to perform operations for which they would be reimbursed under the Medicaid program, were it not for the limitation of reimbursable abortions" and that if "the physicians prevail in their suit to remove this limitation, they will benefit, for they will then receive payment for the abortions."

with the third party; and (3) there is "some hindrance to the [third parties] asserting their own rights." *Campbell v. Louisiana*, 523 U.S. 392, 397 (1998).

In *Singleton v. Wulff*, 428 U.S. 106, 108–09 (1976), the Supreme Court held that physicians had standing to challenge a Missouri statute that excluded from Medicaid funding all abortions except those deemed "medically indicated."  The Supreme Court found that two distinct standing questions were presented: whether the physicians alleged an adequate injury in fact, and whether, as a prudential consideration, the physicians could assert not only their own rights, but also the rights of their putative patients. *Id.* at 112–13.  It concluded that the physicians alleged an injury to their own rights because the challenged statute barred payment that the doctors would otherwise have received for all nontherapeutic abortions.   *Id.* at 113.  A plurality then held that the physicians could properly assert the constitutional rights of their patients, reasoning that the confidential nature of the relationship of doctor and patient assured the effective presentation of the patient's rights, and that practical obstacles often obstructed a woman's assertion of her own rights.  *See id.* at 113–17.

As Plaintiffs note, since *Singleton* "[c]ourts have generally recognized physicians' authority to pursue the claims of their patients."  *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 289 n.12 (3d Cir. 2002) (collecting cases). However, such cases have generally involved physicians asserting the constitutional "basic protection to the woman's right to choose" rather than statutory rights, *Stenberg v. Carhart*, 530 U.S. 914, 922 (2000); *see also Gonzales v. Carhart*, 550 U.S. 124, 133 (2007) (same); *Terry*, 886 F.2d at 1343 (same), and Plaintiffs here assert no constitutional claims on behalf of their patients.

13

Because the restriction on third party standing is "prudential" rather than derived from Article III, "the source of the plaintiff's claim to relief assumes critical importance" and courts must evaluate whether the "statutory provision in question implies a right of action" by third parties or if "Congress [has] grant[ed] an express right of action to persons who otherwise would be barred by prudential standing rules." *Warth v. Seldin*, 422 U.S. 490, 499–501 (1975); *see also Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 12-1057-CV, -- F.3d --, 2014 WL 4652510, at \*13 (2d Cir. Sept. 19, 2014) ("[D]etermination whether a statute permits a plaintiff to pursue a claim 'is an issue that requires [courts] to determine . . . whether a legislatively conferred cause of action encompasses a particular plaintiff's claim.'" (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014) (alterations in original)).

For example, in *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997), the Second Circuit held that a drug treatment program had standing under the Americans with Disabilities Act and the Rehabilitation Act to seek relief for the "legal right of persons with disabilities to be free from discrimination" even though the treatment provider was "not granted legal rights under the statutes."[7]  Notably, however, the enforcement provision of the ADA is broad and extends relief to "any person alleging discrimination on the basis of disability," 42 U.S.C. § 12133, and similarly, the Rehabilitation Act extends its remedies to "any person aggrieved" by discrimination on the basis of his or her disability, 29 U.S.C. § 794a(a)(2).  The Second Circuit found that "the use of such broad language in the enforcement provisions of the statutes evinces a

---

[7] No constitutional claims were asserted.

congressional intention to define standing to bring a private action under 504 [and Title II] as broadly as is permitted by Article III of the Constitution" and thus that the treatment provider had third party standing to assert the rights of its patients. *Innovative Health Sys., Inc.*, 117 F.3d at 47 (internal quotation marks omitted) (alteration in original)).[8]

The only case cited by Plaintiffs that arguably supports their statutory standing theory is *Pennsylvania Psychiatric*, where a divided Third Circuit panel held that psychiatrists had third party standing to assert claims (on behalf of their patients) that "managed health care organizations impaired the quality of health care provided by psychiatrists to their patients by refusing to authorize necessary psychiatric treatment, excessively burdening the reimbursement process and impeding other vital care." 280 F.3d at 280.  Although the court noted that many "successful third-party standing claims have involved alleged violations of third parties' constitutional rights" the Third Circuit determined that "the [Supreme] Court has not held that a constitutional claim must also be alleged." *Id.* at 291.  However, although *Pennsylvania Psychiatric* had been removed to federal court on ERISA preemption grounds, the claims originally pled were state law tort

---

[8] Likewise in *FAIC Sec., Inc. v. United States*, cited by Plaintiffs at oral argument, the relevant statute was the Administrative Procedure Act and the court found that "judicial review is particularly broad in suits to compel federal agency compliance with law, since Congress itself has pared back traditional prudential limitations by the Administrative Procedure Act, which affords review to any person 'adversely affected or aggrieved by [federal] agency action within the meaning of a relevant statute.'"  768 F.2d 352, 357 (D.C. Cir. 1985) (citing *Sierra Club v. Morton,* 405 U.S. 727, 732–33 & n. 4 (1972) (alteration in original)).

and contract claims and the Third Circuit did not discuss whether ERISA allowed third party statutory standing although it seems to have implicitly concluded that it does.[9]

No court to date has read *Pennsylvania Psychiatric* as conferring third party statutory standing under ERISA (*see* Reply at 2 n.2), and such a reading would be inconsistent with Second Circuit precedent.   As discussed *supra*, the Second Circuit has read ERISA as strictly limiting 'the universe of plaintiffs who may bring certain civil actions,'" *Physicians Health Servs. of Connecticut, Inc.*, 287 F.3d at 120, and except for the "narrow" exception for assignment of claims to healthcare providers "in exchange for health care," *Simon*, 263 F.3d at 178, which this Court has found inapplicable here, "non-enumerated parties lack statutory standing to bring suit under § 1132(a)(3) even if they have a direct stake in the outcome of the litigation," *Physicians Health Servs. Of Connecticut, Inc.*, 287 F.3d at 121.   Because "ERISA's 'comprehensive and reticulated' scheme warrants a cautious approach to inferring remedies not expressly authorized by the text," *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247

---

[9] The district court considered whether third party statutory standing was derived from the relevant state law contract and tort claims, not ERISA.  *See Pennsylvania Psychiatric Soc.*, CIV. A. 99-937, 2000 WL 33365907, at *6 (W.D. Pa. Mar. 24, 2000) ("Here, the 'rule or statute' sued upon with respect to the subscribers . . . is a common law fraud claim.").   However, it appears that the relevant statute to analyze for third party standing purposes would have been ERISA, not the state law claims, because "if a plaintiff files suit in state court, ostensibly upon a state law cause of action, and the defendant removes the case on the basis of complete preemption, the federal district court that is persuaded that plaintiff's claim is completely preempted will recharacterize the plaintiff's cause of action as a federal claim for relief."  14B Fed. Prac. & Proc. Juris. § 3722.2 (4th ed.); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67, 64 (1987) (ERISA suit that "purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress" and "recharacterize[d] . . . as an action arising under federal law.").

(2000) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146 (1985)), the Court concludes that ERISA precludes the theory of third party statutory standing that Plaintiffs advance for Counts Two and Three.

3.    *Article III Standing by the Association Plaintiffs (Count One)*

The Association Plaintiffs' contend that they have standing to bring the ERISA claim in Count One on behalf of their members' patients based on a theory of associational standing.  However, "an association has standing to bring suit on behalf of its members" under Article III only when "its members would otherwise have standing to sue in their own right."  *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  The Association Plaintiffs contend that this requirement is met based not on the assignment of claims from patients to doctors, but rather by virtue of the fact that the "Association[] Plaintiffs' members each have third party standing for their patients by virtue of the doctor-patient relationship."  (Pls.' Opp'n at 13.)  However, because the Court has concluded that the Association Plaintiffs' members lack third party standing, the Association Plaintiffs' also lack standing for Count One.[10]

---

[10] Defendants contend that even if the Court were to accept that the doctors had third party standing, such standing does not mean that the Association Plaintiffs' members have "standing to sue in their own right" under *Hunt* and that the Association Plaintiffs advance a "novel 'combination theory' of standing" that "has never been recognized in the Second Circuit" in which the Associations' standing is premised on its members' third-party claims of their patients.  (Defs.' Mem. Supp. at 15–17.)  However, in *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 9 (1988), the Supreme Court held that it was "incorrect" to read *Hunt* "as meaning that . . . member associations must have standing to sue only on behalf of themselves, and not on behalf of anyone else, such as their own individual members."

### B.        Failure to State a Claim[11]

Although the Court concludes that Plaintiffs lack standing, their complaint is challenged on grounds that (1) the Complaint fails to plausibly allege that Defendants were acting as fiduciaries under ERISA to support a breach of fiduciary duty claim and (2) that the ERISA § 502(a)(3) claims should be dismissed because ERISA § 502(a)(1)(B) provides adequate relief.

#### 1.        Breach of Fiduciary Duty (Counts One through Three)

Defendants contend that Plaintiffs' ERISA § 502(a)(3) claims, alleging a breach of fiduciary duty fail because the Complaint does not plausibly allege that Defendants were acting as fiduciaries.  (Defs.' Mem. Supp. at 18.)   ERISA provides that a "'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan."  *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (quoting ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)).   The Second Circuit "has recognized Congress's intention that ERISA's definition of fiduciary be broadly

---

[11] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Detailed allegations are not required but a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (alterations in original).

construed." *Frommert v. Conkright*, 433 F.3d 254, 271 (2d Cir. 2006). "Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." *Id.* (quoting *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997)).

Defendants contend that because the Complaint challenges their rate setting on a "system-wide" basis "regardless of the particulars of the individual plan" (2d Am. Compl. ¶¶ 9–10, 32–33), the challenged conduct relates to a business decision rather than a fiduciary function. (Defs.' Mem. Supp. at 19.) Plaintiffs maintain that they are claiming that Defendants are acting in a "fiduciary" capacity and "maintain sole discretion to set provider reimbursement rates" (2d Am. Comp. ¶ 32) and have breached their fiduciary obligations through the "manipulation of the reimbursement schedules" that have limited "the scope of service" provided to patients (*id.* ¶ 46) and by "[a]pplying financial requirements and treatment limitations" for mental health benefits that are not applicable to medical surgical benefits in violation of the Parity Act (*id.* ¶ 78).

"[A] plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents." *Varity Corp.*, 516 U.S. at 511. Insurance companies and claims administrators who make benefits determinations can be fiduciaries under ERISA. *See Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 465 (7th Cir. 2010) ("As an HMO and a claims administrator possessed of discretion in construing and applying the provisions of its group health plan and assessing a participant's entitlement to benefits, Dean is an ERISA fiduciary."); *see also Winkler v. Metro. Life Ins. Co.*, No. 03cv9656 (SAS), 2004 WL 1687202, at *2 n.20 (S.D.N.Y. July 27, 2004) ("Numerous courts have held that insurance

companies that have final authority to review claims are fiduciaries under [ERISA] section 3(21)(A)." (collecting cases)); *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88 (2d Cir. 2001) ("Empire's unilateral reduction in benefits and its communications about this reduction may have violated the plan documents and, in turn, ERISA § 404(a)(1)(D).").

However, Plaintiffs do not challenge Defendants' discretionary determination of eligibility for benefits "under the terms of the plan documents," *Varity Corp.*, 516 U.S. at 511, but rather dispute the substantive decisions that Defendants have made in setting reimbursement rates "to reduce the fees paid to psychiatrists" (2d Am. Compl. ¶ 43). When carrying out "its duties with respect to a plan," a fiduciary must "discharge his duties . . . solely in the interest of the participants and beneficiaries." 29 U.S.C.A. § 1104 (a)(1). However, because "ERISA does not create any substantive entitlement to employer-provided health benefits . . . . [e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). Thus parties are "not acting as fiduciaries when they amend[] . . . plans." *Janese v. Fay*, 692 F.3d 221, 227 (2d Cir. 2012).

Plaintiffs have not challenged Defendants' use "of discretion in construing and applying the provisions of [their] group health plan[s] and assessing a participant's entitlement to benefits" under the terms of such plans, *Kenseth*, 610 F.3d at 465, but instead challenge Defendants' setting of reimbursement rates and policies regarding the extent of coverage, which are business decisions, *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78,

88 (2d Cir. 2001) ("[G]eneral fiduciary duties under ERISA were not triggered by "corporate business decision.").

Indeed, Plaintiffs acknowledge as much in arguing that adequate relief is not available under ERISA § 502(a)(1)(B), stating that the "fundamental allegation underlying" their claims is not "the improper denial of benefits to beneficiaries under the explicit terms [of] a plan but rather the Defendants' failure to comply with the federal law

mandate of parity in the formulation of medical policies, including reimbursement rates, applied in administering their plans."[12]  (Pls.' Opp'n at 20.)

## 2.    State Law Claims (Counts Four to Eight)

Having dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state claims.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be

---

[12] Since there is no private right of action under the Parity Act to the extent that Plaintiffs seek to challenge Defendants' alleged failure to comply with "the federal law mandate of parity," they must do so through their respective insurance plans, *New York State Psychiatric Ass'n, Inc.*, 980 F. Supp. 2d at 543 ("Since the Parity Act has been incorporated into ERISA, its requirements automatically become 'terms' of every ERISA plan."), and ERISA § 502(a)(1)(B) provides the appropriate  mechanism to do so, providing that a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The Supreme Court has held that a breach of fiduciary duty claim under ERISA § 502(a)(3) "normally would not be 'appropriate'" where ERISA § 502(a)(1)(B) affords adequate relief to recover benefits that are denied in violation of ERISA plan terms.  In *New York State Psychiatric Ass'n, Inc*, the court held that the plaintiffs could not bring a breach of fiduciary duty claim in a case similar to that asserted by Plaintiffs here, because "the gravamen of [the] plaintiff's claim is the wrongful denial of benefits," and "that harm can be adequately remedied through monetary compensation under § 502(a)(1)(B), and courts should not grant additional equitable relief under § 502(a)(3)—such equitable relief would not qualify as 'appropriate' equitable relief."  980 F. Supp. 2d at 540.  The Court considers it a close question whether Plaintiffs have alleged that Defendants were acting as fiduciaries, because the Parity Act has incorporated certain "terms" into all health plans and thus Defendants' alleged "manipulation" could be conceived of as denying patients benefits to which they are entitled under the "terms" of their plans. However, even if Defendants were acting as fiduciaries based on this conduct, adequate relief is available under § 502(a)(1)(B) and thus the ERISA § 502(a)(3) claims would be dismissed on that basis.

considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").[13]

## III.   Conclusion

For the reasons set forth above, Defendants' Motion [Doc. # 37] to Dismiss is GRANTED as to Counts One through Three and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  The Clerk is directed to close this case.


IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 25th day of September, 2014.

---

[13] The Court recognizes that Defendants contend that Plaintiffs' state law tortious interference claims, are preempted by ERISA, which provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  Defendants do not claim preemption as to Plaintiffs' breach of contract claims. (*See* Defs.' Mem. Supp. at 31–37.)  Plaintiffs now have the opportunity to bring one or both of these claims in state court and to ensure that only non-preempted claims are asserted.  In response, Defendants will have the opportunity to again assert ERISA preemption if they believe it is appropriate.